IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JACOB MCCORMICK, | ) | CASE NO.  3:21-CV-01743-JG |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES GWIN |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN NEIL TURNER, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Jacob McCormick ("McCormick" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  McCormick is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. McCormick*, Lorain County Court of Common Pleas Case No. 18CR098405.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.    Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying McCormick's conviction as follows:

> {¶2} The victim and Mr. McCormick met at a roller-skating rink. The victim
> was 12 years old and in sixth grade at the time, and Mr. McCormick was 18
> years old, out of high school, and living with his mother. According to Mr.
> McCormick, he was volunteering at the skating rink when he approached the
> victim because she seemed sad. The two conversed for a short while and

1

exchanged cell phone numbers. According to Mr. McCormick, he did not know the victim was 12 years old, and instead thought she was 15 years old. Although Mr. McCormick denied telling the victim his age, the victim testified that Mr. McCormick told her he was 19 years old.

{¶3} Later that evening, the victim and Mr. McCormick began texting each other and used Skype to video chat. Mr. McCormick eventually suggested that the victim sneak out of her parents' house to meet up with him, which she did. According to the victim, Mr. McCormick picked her up in his car after midnight and they drove to a nearby cemetery. While there, the two got into the back seat of Mr. McCormick's car, kissed, and Mr. McCormick touched her vagina under her clothing, but on top of her underwear. According to Mr. McCormick, they drove to a vacant driveway and kissed; he did not touch her vagina. He then took the victim home.

{¶4} The victim and Mr. McCormick met again the following evening. According to the victim, she snuck out of her parents' house late at night, and Mr. McCormick drove her to his house. While there, Mr. McCormick touched her breasts and vagina, had vaginal sex with her, and then drove her home. According to the victim, the same thing happened the following two nights; she would sneak out late at night, Mr. McCormick would pick her up, they would have sex at his house, and then he would take her home. According to Mr. McCormick, he and the victim never had sex, and he never took her to his house; they would talk and kiss in his car. He testified that he never touched the victim's breasts or vagina.

{¶5} According to the victim's mother, she started to notice a change in the victim's behavior. She testified that the victim started sleeping more, was constantly on her phone, and that she was not completing her schoolwork. The victim's mother asked her older daughter (the victim's half-sister) to look through the victim's phone, which revealed text messages between the victim and Mr. McCormick that caused the victim's mother concern. Specifically, the victim's mother was concerned with text messages from the victim to Mr. McCormick asking him to pick her up late at night, and a text message from Mr. McCormick to the victim indicating that the victim "must smell like sex."

{¶6} The victim's mother contacted the Lorain County Sheriff's Office. Detective Clotz came to the victim's house and spoke with the victim's mother and stepfather; he did not speak to the victim. The victim's mother gave Detective Clotz the victim's cell phone, and Detective Clotz took it to the Sheriff's Office to run a forensic test on it, which revealed over one-thousand text messages between the victim and Mr. McCormick over the course of several days. Detective Clotz was likewise concerned with the content of some of the text messages, so he scheduled an interview with the victim at the Nord Center. During that interview, the victim denied that she and Mr. McCormick had sex. Detective Clotz, however, felt that the victim was not being completely honest, and that the victim was withholding

information because she was not ready to discuss it yet. After the interview, Detective Clotz advised the victim's parents to watch her behavior and make sure she felt comfortable talking to them.

{¶7} According to the victim's mother, a few weeks after the interview, the victim told her that she had not been completely honest with Detective Clotz, and that she felt uncomfortable talking to him because he was male. The victim's mother relayed this information to Detective Clotz, who arranged for a second interview for the victim with a female detective. During that interview, the victim admitted to having sex with Mr. McCormick on one occasion.

{¶8} A grand jury indicted Mr. McCormick on two counts of rape (one in violation of Revised Code Section 2907.02(A)(1)(b), one in violation of Section 2907.02(A)(2)), four counts of gross sexual imposition in violation of Section 2907.05(A)(4), and four counts of contributing to the unruliness or delinquency of a child in violation of Section 2919.24(B)(1). Mr. McCormick pleaded not guilty, and the matter proceeded to a jury trial. The victim, the victim's mother, and Detective Clotz testified on behalf of the State. Mr. McCormick and his mother testified on behalf of the defense.

{¶9} At the close of evidence, the trial court instructed the jury on the elements of each offense. While instructing the jury on the elements of gross sexual imposition, the trial court discussed the element of purpose, indicating that it had previously defined "purposely" for the jury. During a sidebar, the prosecutor stated that purpose is not an element of gross sexual imposition, and the trial court and defense counsel agreed. The trial court then addressed the jury, informing it that purpose was not an element of gross sexual imposition, and that it would correct the written instructions to reflect that. The jury then retired for deliberations.

{¶10} The following day, the trial court indicated to counsel that it originally instructed the jury correctly because the definition of sexual contact, which is an element of gross sexual imposition, includes the word purpose. It then re-instructed the jury on the element of purpose for the gross-sexual-imposition counts, and provided the jury with a corrected set of jury instructions. It advised the jury that if it had already found Mr. McCormick not guilty on those counts, then it did not need to re-deliberate. It also advised the jury that if it had not reached a verdict on those counts, or if it had reached a guilty verdict, then it needed to re-deliberate those counts using the corrected jury instructions. The jury continued to deliberate and ultimately found Mr. McCormick guilty of rape in violation Section 2907.02(A)(1)(b), not guilty of rape in violation of Section 2907.02(A)(2), guilty of all four counts of contributing to the unruliness or delinquency of a child, guilty of three counts of gross sexual imposition, and not guilty of the one remaining count of gross sexual imposition.

{¶11} The trial court merged one of the gross-sexual-imposition convictions with the rape conviction. It then sentenced Mr. McCormick to mandatory life in prison with parole eligibility after ten years for the rape conviction, two years of imprisonment for each of the remaining two gross-sexual-imposition convictions, and six months of imprisonment for each of the contributing-to-the-unruliness-or-delinquency-of-a-child convictions. It then ordered the sentences to run concurrently. Mr. McCormick now appeals, raising four assignments of error for this Court's review.

*State v. McCormick*, 2020-Ohio-3140, 2020 WL 2843238, at **1-2 (Ohio Ct. App. June 1, 2020).

## II. Procedural History

### A. Trial Court Proceedings

On May 3, 2018, the Lorain County Grand Jury indicted McCormick on the following charges: one count of rape in violation of O.R.C. § 2907.02(A)(1)(b) (Count 1); one count of rape in violation of O.R.C. § 2907.02(A)(2) (Count 2); four counts of gross sexual imposition in violation of O.R.C. § 2907.05(A)(4) (Counts 3-6); and four counts of contributing to unruliness or delinquency of a child in violation of O.R.C. § 2919.24(B)(1) (Counts 7-10). (Doc. No. 10-2, Ex. 1.) McCormick entered pleas of not guilty to all charges. (Doc. No. 10-2, Ex. 2.)

The case proceeded to jury trial on April 9, 2019. (Doc. No. 10-2, Ex. 3.) The trial court gave the jury agreed-upon instructions prior to deliberation, and then gave corrected instructions the next day. (Doc. No. 10-2, Ex. 3; Doc. No. 11-3 at 83-84, 121-46, 151-55.) On April 12, 2019, the jury returned its verdict, finding McCormick not guilty of rape (Count 2) and gross sexual imposition (Count 6), but guilty of all other charges. (Doc. No. 10-2, Ex. 3.)

On April 15, 2019, McCormick filed a motion for acquittal to set aside the verdict as to rape (Count 1), arguing that the third element of rape (the defendant engaged in sexual conduct with another person who was not the spouse of the defendant) was not met because the statements by the victim were not credible. (Doc. No. 10-2, Ex. 4.)

4

That same day, the state trial court denied the motion for acquittal and held a sentencing hearing. (Doc. No. 11-3 at 166-67; Doc. No. 10-2, Ex. 5.)  The trial court sentenced McCormick to mandatory life in prison with parole eligibility after 10 years for rape (Count 1); two years in prison for each remaining gross sexual imposition count (Counts 4 and 5); and six months in jail for each contributing to unruliness or delinquency of a child count (Count 7- 10).  (Doc. No. 10-2, Ex. 5.)  All sentences were to be served concurrent to the sentence for Count 1, for an aggregate prison term of life with parole eligibility after 10 years.  (*Id.*)  McCormick was also adjudicated as a Tier III sex offender.  (*Id.*)

**B.    Direct Appeal**

McCormick, through counsel, filed a timely notice of appeal to the Ninth District Court of Appeals.  (Doc. No. 10-2, Ex. 6.)  In his appellate brief, he raised the following assignments of error:

I.    Mr. McCormick was deprived the right to a fair trial under the state and federal due process clauses as a result of the trial court's erroneous jury instructions which were corrected a day after they were charged originally.

II.    Mr. McCormick's sentence is cruel and unusual punishment, in violation of Article 1, Section 9 of the Ohio Constitution and the Eighth and Fourteenth Amendment of the United States Constitution where the sentence is grossly disproportionate to the nature of the offense.

III.    The verdict in this case is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

IV.    The convictions are against the manifest weight of the evidence in violation of the due process clause of the 14th Amendment to the U.S. Constitution and of the Ohio Constitution.

(Doc. No. 10-2, Ex. 7.)  The State filed a brief in response.  (Doc. No. 10-2, Ex. 8.)

On June 1, 2020, the state appellate court affirmed McCormick's convictions.  (Doc. No. 10-2, Ex. 9.)  *See also State v. McCormick*, 2020 WL 2843238, at *1.

5

On July 6, 2020, McCormick, proceeding *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 10-2, Ex. 10.)  In his Memorandum in Support of Jurisdiction, McCormick raised the following Propositions of Law:

I.     Trial errors prevented a fair trial in accordance to both the U.S. Constitution and the Ohio Constitution.

> Error 1 - Mr. McCormick was deprived the right to a fair trial under the state and federal due process clauses as a result of the trial court's erroneous jury instructions which were corrected a day after they were charged originally.

> Error 2 - Mr. McCormick's sentence is cruel and unusual punishment, in violation of Article 1, Section 9 of the Ohio Constitution and the Eighth and Fourteenth Amendments of the United States Constitution where the sentence is grossly disproportionate to the nature of the offense.

> Error 3 - The verdict in this case is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

> Error 4 - The convictions are against the manifest weight of the evidence in violation of the due process clause of the 14th Amendment of the United States Constitution and of the Ohio Constitution.

(Doc. No. 10-2, Ex. 11.)  The State waived filing a response.  (Doc. No. 10-2, Ex. 12.)

On September 1, 2020, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 10-2, Ex. 13.)

## C.    Federal Habeas Petition

On August 26, 2021,[1] McCormick filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until September 7, 2021, McCormick states that he placed it in the prison mailing system on August 26, 2021.  (Doc. No. 1 at 9.)  Thus, the Court will consider the Petition as filed on August 26, 2021.

**GROUND ONE**:  Mr. McCormick was deprived the right to a fair trial under the state and federal due process clauses as a result of the trial court's erroneous jury instructions which were corrected a day after they were charged originally.

> **Supporting Facts**:  Trial court failed in giving proper jury instructions on the element of purpose three times. Additionally failed to instruct the jury on the *Howard* charge.

**GROUND TWO**:  Mr. McCormick's sentence is cruel and unusual punishment, in violation of Article 1, Section 9 of the Ohio Constitution and the Eighth and Fourteenth Amendments of the U.S. Constitution where the sentence is grossly disproportionate to the nature of offense.

> **Supporting Facts**:  At the time of offense the defendant was only 18 years old.

**GROUND THREE**:  The verdict in this case is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

> **Supporting Facts**:  The conviction is based on insuffient [sic] evidence where there is not suffient [sic] evidence as to penetration to prove sexual conduct.

**GROUND FOUR**:  The convictions are against the manifest weight of the evidence in violation of the due process clause of the Fourteenth Amendment of the U.S. Constitution.

> **Supporting Facts**:  The conviction is against the manifest weight of evidence where A.W.'s testimony is not credible.

(Doc. No. 1.)

On April 14, 2022, Warden Neil Turner ("Respondent") filed the Return of Writ. (Doc. No. 10.)

McCormick filed a Traverse on July 27, 2022.  (Doc. No. 13.)

### III. Exhaustion and Procedural Default

**A.**   **Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the

7

state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

8

available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's

efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

## B.    Application to Petitioner

In Ground One, McCormick asserts he was deprived of his right to a fair trial "under state and federal due process clauses as a result of the trial court's erroneous jury instructions which were corrected a day after they were charged originally." (Doc. No. 1 at 6.)

While Respondent fails to state Ground One is procedurally defaulted or non-cognizable, Respondent implies such arguments by insisting that any error would be an error of state law, not a federal constitutional error. (Doc. No. 10 at 15-16.)

McCormick argues he "fully and fairly" presented all his claims as "federal constitutional issues" to the state courts. (Doc. No. 13 at 3-5.)

As another court in this Circuit recently explained:

> In order to have properly exhausted a federal habeas claim, the substance of the claim must have been presented to the state courts as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Rather, "the legal and factual basis of the claim must be 'fairly presented' to the state courts so that they have an opportunity to remedy the alleged constitutional violation." *Arnold v. Warden, Lebanon Corr. Inst.*, 832 F. Supp. 2d 853, 860 (S.D. Ohio 2011) (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)).

*Owens v. Perry*, No. 1:17-cv-00105, 2019 WL 6250763, at *8 (M.D. Tenn. Nov. 22, 2019).

Here, McCormick presented his jury instruction argument to the appellate court under state law exclusively. Although McCormick invoked the "federal due process clause" in the heading and last sentence of his jury instruction argument, his appellate brief focused solely on the application of state law, particularly the application of the Ohio Supreme Court decision in *State v. Howard*, 42 Ohio St.3d 18 (1989). (Doc. No. 10-2, Ex. 7, at 41-46.) In another habeas case, a petitioner argued he had fairly presented his Confrontation Clause claim "by citing the United States Constitution, 'due process,' and his right to a 'fair trial,'" some of the state precedent he cited in his appellate brief contained Confrontation Clause analysis, and the preclusion of a line of inquiry "should have, by itself, alerted the Ohio Court of Appeals to a possible violation of the Confrontation Clause." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). The Sixth Circuit held McMeans failed to "fairly present" his Confrontation Clause claim to the state courts:

> We are of the opinion that the petitioner did not "fairly present" his claim. In his direct appeal, the petitioner focused entirely on the applicability of Ohio's rape shield law. Ohio Rev.Code Ann. § 2907.02. He did not cite any federal precedent and his appellate brief only alleges that the trial judge's limitation on cross-examination denied him a "fair trial" and "due process." As this

11

> court recognized in *Franklin,* this is not sufficient to alert a state court that an appellant is asserting the violation of a specific constitutional right. While it is true that a few of the state cases cited by the petitioner on direct appeal contain references to the Confrontation Clause, the majority of those cases were concerned with Ohio evidence law. We do not think that a few brief references to the Confrontation Clause in isolated cases is enough to put state courts on notice that such a claim had been asserted. Thus, we hold that the petitioner failed to "fairly present" his Confrontation Clause claim to the Ohio courts.

*Id.* at 682.  *See also Morgan v. Warden*, Case No. 1:19-cv-93, 2021 WL 5630743, at *5 (S.D. Ohio Dec. 1, 2021) ("True, Morgan invokes 'a defendant's right to a fair trial and due process of law' at the outset of her evidentiary argument. (Obj., Doc. 14, #967). But Sixth Circuit case law suggests that it is not enough to tack such an entirely unelaborated claim of a federal constitutional violation onto an argument otherwise grounded in state law.").

As the United States Supreme Court has made clear, "mere similarity of claims is insufficient to exhaust."  *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).   The state appellate court, when presented with McCormick's jury instruction claim, "understandably confined its analysis to the application of state law." *Id.*

As a result, the Court finds Ground One is procedurally defaulted.[3]

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.)   As noted above, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin*,

---

[3] Even if the Court determined McCormick's plain error argument sufficiently stated a federal constitutional claim and therefore such a claim was not procedurally defaulted, it would be meritless, for as the state appellate court noted, the trial court ultimately instructed the jury with the correct instruction, and therefore McCormick could not show any error, let alone plain error.

434 F.3d at 417 (6th Cir. 2006) (quoting *Murray*, 477 U.S. at 488).  Prejudice does not occur unless the petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason*, 320 F.3d at 629.  Here, McCormick has neither presented any cause for his default, nor has he alleged ensuing prejudice.[4]  In addition, McCormick fails to assert actual innocence, nor has he has come forward with any new, reliable evidence to support a credible claim of actual innocence.  (Doc. Nos. 1, 13.)

Accordingly, and for all the reasons set forth above, it is recommended Ground One be dismissed as procedurally defaulted.

### IV. Non-cognizable Claims

**A.    Ground One**

It is well established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  As such, the Supreme Court has explained "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions." *Id.* at 67-68.  *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Stated another way, a state court's interpretation of state law is binding upon a

---

[4] The Court notes ineffective assistance of counsel may serve as cause to excuse the procedural default of a claim if it rises to the level of a constitutional violation, but only if the underlying claim of ineffective assistance of counsel is not itself defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).  However, McCormick failed to exhaust any ineffective appellate counsel grounds in a Rule 26(B) application.  *Terry v. Jackson*, No. 16-4330, 2017 WL 5664915, at *2 (6th Cir. July 17, 2017).  State law will no longer allow him to pursue these claims.  *See id.*  "Because [McCormick] is well outside the ninety-day window of Rule 26(B), that claim is itself procedurally defaulted, *see Coleman*, 501 U.S. at 735 n.1, and cannot serve as cause to excuse [his] original procedural default.  *See Carpenter*, 529 U.S. at 453.  Thus, even if McCormick had argued the ineffective assistance of appellate counsel was cause to excuse the default of this claim, such an argument would be without merit because any underlying ineffective assistance of counsel claim is itself defaulted.

federal habeas court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *Bibbs v. Bunting*, 1:16-cv-02069, 2017 WL 4083558, at *15 (N.D. Ohio May 17, 2017).  *See also Thompson v. Williams*, 685 F. Supp. 2d 712, 721 (N.D. Ohio 2010) (stating "a federal court may not second-guess a state court's interpretation of its own procedural rules.") (citing *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988)).  "Federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 765, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).  *See also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")

Therefore, in addition to being procedurally defaulted, Ground One is also non-cognizable.

**B.  Ground Four**

In Ground Four, McCormick argues his convictions are against the manifest weight of the evidence.  (Doc. No. 1 at 8.)  Respondent asserts that a manifest weight of the evidence claim is non-cognizable on federal habeas review.  (Doc. No. 10 at 24.)

It is well-established manifest weight of the evidence claims are not cognizable on federal habeas review. *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Howard v. Tibbals*, No. 1:12 CV 1661, 2014 WL 201481, at *16 (N.D. Ohio Jan. 17, 2014); *Hess v. Eberlin*, No. 2:04-cv-1144, 2006 WL 2090093, at *6 (S.D. Ohio Jan. 17, 2006). *See also Gibson v. Miller*, 5:15CV119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims.").  Under Ohio law, an argument a conviction is against the manifest weight of the evidence "requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess,* 2006 WL 2090093, at *7

14

(quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983)).  Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Harris's conviction was against the manifest weight of the evidence.  *See id.*

The Sixth Circuit has construed manifest weight of the evidence claims as sufficiency of the evidence claims on habeas review.  *Nash*, 258 F. App'x at 764 n.4 (Petition asserted a manifest weight of the evidence claim, not an insufficiency of the evidence claim, but the Sixth Circuit interpreted petition "as a complaint that the state court erroneously found [Petitioner's] conviction to be supported by sufficient evidence.").  Here, McCormick raised a sufficiency of the evidence claim in Ground Three, which the Court addresses on the merits below.

### V. Review on the Merits

**A.      Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.  "This

16

standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1.    Ground Two

In Ground Two, McCormick argues his sentence is "cruel and unusual punishment" in violation of the Ohio and United States Constitutions "where the sentence is grossly disproportionate to the nature of offense" and he was only 18 years old at the time of the offense.  (Doc. No. 1 at 7.)

Respondent asserts that McCormick "fails. . . to state a federal constitutional claim."  (Doc. No. 10 at 18.)  According to Respondent:

> The United States Supreme Court has interpreted the Eighth Amendment to contain a narrow proportionality principle, but that interpretation does not require strict proportionality between crime and sentence in a non-capital case. See *Harmelin v. Michigan*, 501 U.S. 957, 967 (1991); *United States v.*

17

> *Moore*, 643 F.3d 451, 454 (6th Cir. 2011) (and cases cited therein). Federal courts imposing a sentence on federal prisoners will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole. *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). These are not the penalties McCormick received.

(*Id.*)

McCormick raised a cruel and unusual punishment claim to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 10-2, Ex. 7, 11.)  The state appellate court considered this claim on the merits and rejected it as follows:

> {¶18} In his second assignment of error, Mr. McCormick argues that his sentence for rape is cruel and unusual punishment as applied to him. More specifically, he argues that his sentence is unconstitutional because it is grossly disproportionate to the nature of the offense in light of the fact that he was only 18 years old at the time of the offense, and because he did not use force, which is supported by the fact that the jury acquitted him of rape under Section 2907.02(A)(2).

> {¶19} The Eighth Amendment to the United States Constitution (applied to the states through the Fourteenth Amendment) and Article I, Section 9 of the Ohio Constitution prohibit the infliction of cruel and unusual punishment. Here, the trial court sentenced Mr. McCormick to life in prison with parole eligibility after ten years for the rape conviction in accordance with Section 2971.03(B)(1)(a). "As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69 (1964). "[W]e are to presume that the state statute is constitutional, and the burden is on the person challenging the statute to prove otherwise beyond a reasonable doubt." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 17. "In an as-applied challenge, the challenger 'contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional.'" (Alteration sic.) *Id.*, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 1011 (1992) (Scalia, J., dissenting).

> {¶20} In support of his assignment of error, Mr. McCormick relies upon the United States Supreme Court's decision in *Solem v. Helm*, which stated that:

> > a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

18

463 U.S. 277, 292 (1983). He also cites Ohio case law for the proposition that "a sentence does not violate the constitutional prohibition against cruel and unusual punishment if it is not so greatly disproportionate to the offense as to 'shock the sense of justice of the community.'" *State v. Barnes*, 136 Ohio App.3d 430, 434 (8th Dist.2000), quoting *State v. Chaffin*, 30 Ohio St.2d 13, 17 (1972). Further, Mr. McCormick relies upon the United States Supreme Court's decision in *Roper v. Simmons*, holding that the death penalty cannot be imposed upon persons under the age of 18, and a Kentucky court's expansion of that ruling to the age of 21. *See Roper v. Simmons*, 543 U.S. 551, 575 (2005); *Commonwealth of Kentucky v. Bredhold*, Ky.Cir.Ct. No. 14-CR-161, 2017 WL 8792559, *6 (Aug. 1, 2017). He acknowledges that the latter two cases address the death penalty, but concludes that they are applicable to an 18-year-old being sentenced to life in prison because studies regarding juveniles' brain development demonstrate that individuals cannot make proper decisions until they are at least 21 years old. He then summarily concludes – without any citations to authority – that his sentence is disproportionate in comparison to other cases with older defendants, and that his sentence is cruel and unusual punishment because his acquittal for rape under Section 2907.02(A)(2) indicates that he did not use force.

{¶21} This Court is unpersuaded by Mr. McCormick's reliance upon federal case law regarding the unconstitutionality of sentencing a juvenile to death, which is readily distinguishable. Regarding his argument under Ohio law, Mr. McCormick ignores case law holding that a life sentence for raping a child does not constitute cruel and unusual punishment. *See State v. Accorinti*, 12th Dist. Butler Nos. CA2012-10-205, CA2012-11-221, 2013-Ohio-4429, ¶ 22 (collecting cases). Moreover, he has not directed this Court to any authority demonstrating why his sentence is unconstitutional as applied to him because he was only 18 years old at the time of the offense, and he did not forcibly rape the victim. *See* App.R. 16(A)(7). Based upon the limited argument presented, we cannot say that Mr. McCormick has met his burden of proving that his statutorily mandated sentence for rape is unconstitutional as applied to him. *See Lowe*, 2007-Ohio-606, at ¶ 17. We, therefore, overrule his second assignment of error.

*State v. McCormick*, 2020-Ohio-3140, 2020 WL 2843238, at **5-6.

The trial court imposed a mandatory sentence of life in prison with the possibility of parole after 10 years. (Doc. No. 10-2, Ex. 5.) "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *U.S. v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995) (citing *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *United States v.*

*Dumas,* 934 F.2d 1387 (6th Cir. 1990)).  Therefore, McCormick's Eighth Amendment argument cannot succeed.  *Id.*  Further, any state law claim under the Ohio Constitution is not cognizable on federal habeas review.

It is recommended McCormick's second ground for habeas relief be DENIED.

**2.      Ground Three**

In Ground Three, McCormick argues the verdict was against the sufficiency of the evidence in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution.  (Doc. No. 1 at 7.)  McCormick maintains "there is not suffient [sic] evidence as to penetration to prove sexual conduct."  (*Id.*)

Respondent argues that any claims based on the Ohio Constitution are non-cognizable.  (Doc. No. 10 at 19.)  With respect to the federal constitutional claims, the state appellate court rejected McCormick's sufficiency of the evidence argument on the merits.  (*Id.* at 21.)  Therefore, Respondent asserts Ground Three is meritless.  (*Id.* at 22.)

McCormick raised a sufficiency of the evidence claim to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 10-2, Ex. 7, 11.)  The state appellate court considered this claim on the merits and rejected it as follows:

> {¶22} In his third assignment of error, Mr. McCormick argues that his rape conviction is not supported by sufficient evidence. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct de novo review, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

> {¶23} Section 2907.02(A)(1)(b), under which Mr. McCormick was convicted, provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * "[t]he other person is less than

20

thirteen years of age, whether or not the offender knows the age of the other person." The definition of "[s]exual conduct" includes "vaginal intercourse between a male and female[,]" and provides that "[p]enetration, however slight, is sufficient to complete vaginal * * * intercourse." R.C. 2907.01(A).

{¶24} Mr. McCormick's challenge to the sufficiency of the evidence is based upon the victim's alleged lack of credibility. Specifically, he points to the fact that the victim testified that he did not ejaculate, which he asserts was not credible. He, therefore, concludes that the State was unable to prove the elements of penetration and sexual conduct for purposes of his rape conviction.

{¶25} As the Ohio Supreme Court has "repeatedly pointed out[,]" an evaluation of a witness's credibility "is not proper on review for evidentiary sufficiency." *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79. We, therefore, reject Mr. McCormick's argument as it relates to the victim's credibility. Further, the victim testified that Mr. McCormick inserted his penis into her vagina. This was sufficient to prove sexual conduct as defined under Section 2907.01(A); the State was not required to prove that Mr. McCormick ejaculated. *See State v. Bush*, 4th Dist. Ross No. 09CA3112, 2009-Ohio-6697, ¶ 45 ("[T]he crime of rape does not require the State to prove that the defendant achieved a sexual climax."). Thus, in light of the arguments presented, Mr. McCormick has not established that the State failed to present sufficient evidence to support his conviction for rape. Accordingly, Mr. McCormick's third assignment of error is overruled.

*State v. McCormick*, 2020-Ohio-3140, 2020 WL 2843238, at *6.

In addressing McCormick's manifest weight of the evidence argument, the state appellate court further found as follows:

{¶26} In his fourth assignment of error, Mr. McCormick argues that his convictions are against the manifest weight of the evidence. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Notably, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts[,]" who is "free to believe all, part, or none of the testimony of each witness." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. "This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness

21

testimony over the testimony of others." *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 15. "An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases in which the evidence weighs heavily against the conviction." *State v. Austin*, 9th Dist. Summit No. 28199, 2017-Ohio-7845, ¶ 39, citing *Otten* at 340.

{¶27} In support of his assignment of error, Mr. McCormick argues that the victim was not credible. He points to the fact that the victim testified that he and his mother got into an argument one evening while she was at his house, and that the police arrived. Mr. McCormick and his mother, however, testified that this did not happen. Detective Clotz confirmed that there were no records of the police responding to the house during the evening/early morning hours when the victim stated that she was at the house.

{¶28} In further support of his assignment of error, Mr. McCormick argues that the victim was not credible because she provided four different explanations of what sexual contact, if any, occurred between them. He notes that the victim told Detective Clotz that she did not have sex with him, she did not tell her parents that she had sex with him, she told the female detective that they had sex one time, and then she testified at trial that they had sex every time they met with the exception of the first night in the cemetery.

{¶29} Regarding his argument relative to the victim's testimony that the police responded to his house on one of the nights she was there, the victim admitted that she did not see the police. She testified that she heard someone arrive, and that Mr. McCormick told her that the police had arrived because he and his mother got into an argument. The jury was free to believe the victim's testimony in this regard. *Jordan*, 2004-Ohio-7184, at ¶ 35. Regarding the different explanations of what occurred between her and Mr. McCormick, defense counsel cross-examined the victim about the various inconsistencies. The victim acknowledged these inconsistencies but testified that she was telling the truth at trial. She further testified that she was worried she would get into even more trouble if she disclosed how many times she and Mr. McCormick had sex. Again, the jury was free to believe the victim's testimony in this regard. *Id.*

{¶30} Having reviewed the record and the arguments presented on appeal, this Court cannot say that Mr. McCormick has established that this is the exceptional case where the evidence weighs heavily against his convictions. Mr. McCormick's fourth assignment of error is overruled.

*Id.* at **7-8.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the

offense charged. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *Id. See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782, at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70.) *See also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012). Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of

23

fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

The entirety of McCormick's sufficiency of the evidence (and manifest weight of the evidence) argument consists of the unreliability and incredibility of the victim's testimony. (Doc. No. 13 at 17-21.) However, it is not for this Court to weigh evidence or determine credibility. *See Jackson*, 443 U.S. at 317-19; *Coleman*, 566 U.S. at 651. Further, any state law claim under the Ohio Constitution is not cognizable on federal habeas review.

The undersigned recommends Ground Three be DENIED.

## VI. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date: December 1, 2022

    *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**